calendar this morning, two patent office re-examination cases, a case from the Court of Federal Claims and a government employee case from the MSPB. The latter being submitted on the briefs and will not be argued. The first case is KSHIMPP v. Hear-Wear Technologies, 2013-15-49. Mr. Stern. Good morning, Your Honors, and may it please the Court, my name is Robert Stern, and general knowledge and common sense of skilled artisans. There are two issues here, Your Honors. The first is whether a proposed rejection must cite a specific prior art patent. Or printed publication to establish what was general knowledge or common sense to a person of ordinary skill in the art. General knowledge and common sense do make sense, and we've read KSR, but we're talking about a structural claim limitation. Don't we need a reference for that? No, Your Honor. We set forth in our re-examination request a full explication of why common sense and general knowledge should apply here. We're really talking about connecting electrical circuits in this claim limitation. I agree with the Court that this should be only used in the exception rather than the rule, but when you have very simple technology that's being covered by these claim limitations, where the remaining portion of the claim combination has gone down in the re-exam and is not patentable, because all the other claims on which claims 3 and 9 depend were found by the Patent Trial and Appeal Board to be unpatentable on five grounds of rejection that were all based on the Shiniff patent, the base patent that we cited in combination with general knowledge and common sense. So our position is that we made a full and adequate prima facie case showing under 103 that the office was incorrect at the CRU level, the central re-exam unit level, to not adopt. What rule or regulation did the Board fail to follow? Well, Your Honor. In sua sponte, you wanted them to sua sponte enter new rejections based on prentice. We wanted them to adopt the proposed rejection initially, and then we filed the ex parte re-examination based on the prentice reference as well as four other references that showed this basic electrical connection concept. My question was, what reg or rule did they fail to follow? Well, under section 315A of the re-examination process and rule, excuse me, 314A of the re-examination process plus rule 104 of the PTO regulation, they need to conduct the re-examination as they would a ordinary examination. The prentice patent was submitted by... Forget about the prentice patent. We're talking about whether the examiner and the Board erred in failing and requiring something beyond the record as opposed to being within the expert knowledge of the examiner or the Board. And basically, our cases, Ehlers and many of the earlier cases, suggest that the examiner and the Board, as part of this process, are supposed to rely on their expertise and knowledge and common sense in reaching a conclusion, right? Correct. I mean, that's what it's all about. It's not whether the prentice patent was properly before them. It probably wasn't. But whether they could refuse to rely on their expert knowledge in examining the patent. That seems to be, to me, a somewhat startling proposition. It is startling. And that's why we ended up with only Claims 3 and 9. In surviving this re-examination, all the other claims have gone down. And going back to Judge Wallach's question, though, Your Honor, the prentice patent, in our opinion, is part of the record. Aside from what you just said... You keep arguing the prentice patent. No, no. I agree. We don't need to argue the prentice patent. But what we have done in the briefs, Your Honors, is ask not only that the case be remanded because a proper prima facie case was made, but we would also like the court to consider taking judicial discretion here and find Claims 3 and 9 unpatentable. And the basis for this is not only common sense and general knowledge, but also the prentice patent and also the art that was cited in the original prosecution that we referenced in our re-examination request. And the reason we think that it would be appropriate here to invalidate the claims at the court of appeals level is because this is a very tortured re-examination process. At every stage of it, we tried, unsuccessfully, to bring to the office's full consideration a multitude of prior art that shows the limitations in Claims 3 and 9, but we were denied at every stage the opportunity to get it into the record by Hearware constantly filing motions to expunge and by the Patent Office putting a blinkered approach to the entire process. And yet the same CRU examiner's team, all three of them, were on the inter-party re-exam and on the ex-party re-exam. And as our chart shows on pages 26 and 27, in the space of one day, this examiner team first rejected Claims 3 and 9 over prentice, and then the next day, in the examiner's answer, confirmed them. So the office is in a... Those aren't your best arguments. They're not. I agree. I agree. I'm just saying that we would like the court to consider invalidating these, finding these claims obvious so that we do not have to go through this process again. This has been going on since 2008. All of the claims have been cancelled, except these two, which survived through this very anomalous result that occurred because the base claims, 2 and 8, were confirmed in the ex-party re-exam. So now we find ourselves with Claims 3 and 9, which are on a very peripheral limitation that is just general electrical connections between two electrical components. That cannot be a patentable feature. The hearer, as we said in our brief, has never argued these claims are patentable. So this is why I'm arguing for judicial notice. But I would agree that the patent office put on a very blinkered approach. We provided a fully adequate obviousness prima facie case, and it should have been adopted by the CRU examiners and the claims put to the test. It doesn't seem to me to be the function of the appellate court to take judicial notice of the ordinariness of certain recited claim limitations. We can take judicial notice that today is Wednesday and we had snow earlier in the week, and I'm glad you made it through the snow, but we don't make rejections based on judicial notice of finding a claim limitation to the common sense. Well, Your Honor, you have two, as we explained, you have two bases on which to do this, to obtain this result. One would be using judicial notice, general knowledge and common sense. But we also presented in the brief the proposition that you could do this by taking judicial notice of the Prentiss patent. But Prentiss wasn't part of the substantial new question of patentability for the inter partes pre-exam, right? And PTO declined not to combine the ex parte and the inter partes proceedings, which was within its discretion. So Prentiss shouldn't be before us, should it? Well, it was submitted in the IDS, as I said, and the examiner checked off on the IDS form. But not by you, on the SNQ. Correct. It was not part of the SNQ. But the Iceberg reference and also the other... That's not the tip of the iceberg. That's the whole reference. That's the whole reference, Your Honor. The Iceberg reference and the writer references were cited in the five new grounds of rejection. And they were also the references that appeared in the office action in the original prosecution. And under standard havens, you can take judicial notice of that office action, which we cited to and which was part of the SNQs. I don't understand your point to be that we should be taking judicial notice. That's not the primary point. The primary point, if I understand your argument, is that the board and the examiner cannot say we refuse to rely on our knowledge of the art and that we have to have evidence in the record of something which is commonly known in the art. That would be a major limitation on the examination process. That's the point, right? That is the point, Your Honor. That is the point. Trying to bring in Prentiss, which is a very questionable thing, is not helpful to you. That's correct. I would agree, Your Honor. I'm just trying to say that the board had before it ample evidence in all of these cited documents and these IDSs plus the documents that were part of the SNQ to support the idea that in taking, in considering common knowledge and common sense, as we had set forth, that this limitation was obvious. Do you want to save five minutes? We're into your rebuttal time. You can continue or save it. No, Your Honor. I do want to save five minutes, if I may. Thank you. Ms. Kedura. Good morning, Your Honor, and may it please the Court. Sheila Kedura. How could it be consistent with KSR and our prior cases for the board and the examiner to say we can only look to record evidence and we can't rely on our expert knowledge in examining patents? How could that possibly be consistent with those cases? I would first of all point out that there's nothing in KSR that requires the board or the examiner to accept an unsupported assertion about what would be known. That's not the point. It's not that they have to accept it. It's that they have to rely on their common knowledge and common sense, and that's what KSR says. It is an obligation of the Patent Office to rely on its common knowledge and common sense and its expert knowledge in examining patents, no? Yes, Your Honor, it is. How is what the board did here consistent with that? They said we can't do that. We have to find evidence in the record. That's just not true, right? But the examiner can, for example, take official notice of a particular finding. But they refused to do that. How could it be permissible for them to refuse to rely on their expert knowledge in examining patents and to insist that the evidence be on the record? I think in light of this Court's cases that discuss the requirement for evidence for a core factual assertion... No, no, our cases don't say that. They say the opposite. They say you don't have to have it on evidence of it. You can rely on general knowledge. The PTO is supposed to have general knowledge. It's supposed to rely on general knowledge, no? So I'm referring specifically to the In Re Zerco case, Your Honor. And in that case, the question was, was a particular limitation known in the prior art? And the board said yes, based on common knowledge. And this Court said that was reversible error. If you're talking about a core factual assertion, and this gets maybe to Judge Lori's point a little bit, a structural limitation in the art, you actually do need some... concrete evidence in the record to say that would really be known. So you're distinguishing between core factual assertions and peripheral ones? To some extent, but that's what the Court called this type of an assertion in the In Re Zerco case. Isn't your best argument that it's a slippery slope to encourage examiners to make rejections of claims with specific components when one of them isn't there? That would be correct, Your Honor. And this would be even particularly true in reexamination. So in a reexamination, the burden is on the third-party requester to come forth with the relevant art, and that's what the statute says. You have to put in the relevant art, and you have to show the PTO how that art applies to each claim for which you're requesting reexamination. But of course, this is a well-known structural feature, a multi-pronged plug. To some extent, Your Honor, but we would point out that in the context of this claim, it's a structural limitation between two particular components of a hearing aid. Well, if it's well-known, why shouldn't the board take account of that? So we would not agree that that's well-known. It's not well-known? What's not well-known about it? What is being claimed here? No, the two-pronged connection. Is that well-known or not? To the extent you consider it to be like an electrical plug, sure. But in the context of the claim... Sure it's well-known. In the context of the claim here... Is that what you're saying, sure it's well-known? If you think about it as just an electrical plug, I would call that well-known. But we would say that that's not what we're talking about here. We're talking about a particular connection between two specific components in a hearing aid, and that's what's being claimed. A kind of two-pronged connection. A plurality of prongs, yes, Your Honor. I would also point out that when we're talking about... So the board can't look to see what's well-known in the electrical arts in terms of connections? It has to find it specifically in the hearing aid context? Is that what you're saying? Not necessarily, Your Honor. The board certainly has its discretion to consider its own knowledge as well as to look to whatever relevant art the board thinks is necessary in making a rejection. But how is what the board did consistent with the statement you just made? They refused to exercise their discretion. They said, we can't. We have to find it in the record. How is that consistent with their exercising their discretion? The court noted that you should have to have evidence when you're talking about whether or not a limitation was known in the art. And there was just no evidence. Hemp never armed the PTO with anything to back up an assertion about whether or not this particular type of connector would be known. So the board is forbidden to look to common knowledge that two-pronged connectors exist? Not that the board is forbidden, Your Honor, but the board has discretion in determining whether or not it's going to require evidence. So the board could look to the electrical arts to see if it was up well enough? In its discretion, it could do so, yes. But that's what it didn't do. It refused to exercise its discretion and knowledge. It said, we can't do this, right? It said that there was no evidence of record of this. And again, I would point out that we're talking about a special kind of proceeding here, where the statute says it's up to the inter-party's re-examination requester to put in the art and to show the PTO how it should be applied. And HIPP did not do that here. And when it belatedly attempted to get some evidence in on this, the PTO expunged those comments. Are you saying that the re-examination protester did not provide any documentation of the plug, the plurality plugs? Correct. It did not. And HIPP has admitted that it did not do so. Then your view is it has to? If you're talking about whether or not something is known in the art and you're a re-examination requester, the statute says you have to put in art and you have to show the PTO how that art applies to every claim for which you're requesting re-examination. That would include the claim on appeal. Well, that sounds as though they can never rely on common knowledge and common sense. The PTO does have its discretion to do so, but it should not be reversed for failing to do so when the third-party requester did not give the PTO any evidence on that point. You're saying the requester did not present any evidence on it, neither did the examiner produce evidence of it in his own search. Yes, Your Honor. So there's a double failure. And so by the time the examiner said he couldn't do it, it had to be on the record. That's not what they're supposed to do in examination, right? I'm not following, Your Honor. There was no exercise of discretion as to whether to look to common knowledge and common sense. The examiner and the board said, we can't do it, it has to be on the record. They noted that there was no evidence, right. So, for example, examiners can rely on personal knowledge and there are procedures that allow examiners to do so. The examiner has discretion whether or not to apply that particular rule. Well, how do we know that the examiner exercised that discretion when there's no indication that he did? There's no indication here that the examiner knew that these things were in the prior art and just chose to ignore it either. Well, it was directed to the initial examiner's conclusion, right? The initial examiner did state something about this plurality of prongs feature, but the board ultimately said that wasn't an official fact-finding and said there wasn't a basis. It's not a fact-finding, but it might suggest to the examiner the second time around that he should ask whether this was common knowledge, right? Sure, but the board also noted that there wasn't an explicit basis for that original examiner's findings, such that that may not be persuasive to the next examiner. Would you agree that the board could say that there is common knowledge of such a plug, and here it is? In other words, they could consider common knowledge, but they have to produce evidence of it. There are a couple of ways they can do it. Examiners can rely on their own personal knowledge because we recognize that examiners often are persons of ordinary skill in the art, and they can do so. They can also take official notice of facts, but when they do so, they have to be prepared to back it up because the rules say if they're challenged on that, they have to be able to cite the evidence in the record. And the problem here isn't lack of capacity, but lack of backing it up. Correct. But the problem is the examiner didn't ask the question. I think it's unclear whether the examiner asked the question here. The examiner said, I don't have any evidence of this, but the examiner didn't say anything about his or her expertise in the subject. But the examiner rejected the claim, right? The board overrode it. No, no. The examiner never rejected the claim. The examiner found a substantial question of patentability, but ultimately then found that a prima facie case of obviousness could not be made. So these claims were never rejected, which I think is a great point, Your Honor, because in this discussion today, we're talking about a hypothetical rejection that Hearware has never had a chance to argue against. Had a rejection actually been made, Hearware would have argued against the particular references that were cited and whatever rationale was used to say that those references were combinable. But that never happened. And so that's why we're having this hypothetical discussion today. Hearware also would have had the opportunity before the PTO, if helpful, to put in evidence on its positions on non-obviousness. And that didn't happen either, because the claims were never rejected. And Hearware certainly does not have the opportunity to put in evidence to this court. And Hearware also could have potentially amended its claim, but that was helpful. But that's not the argument. The argument is that the examiner should have asked, what's common knowledge? Because he's a person of skill in the art. And he or she, I don't know which it is, didn't ask the right question, seemed to think that he or she was bound not to look beyond the record. That's not correct, right? So I would point out that the examiner did not. Is that correct? No, no. Is that correct? No, the examiner is not. The examiner can look to the examiner's own expertise. That is correct. And what's the indication here that the examiner thought that that was permissible when the examiner said there's no evidence in the record? But there's also no indication that the examiner thought it was not permissible, because there's nothing on the record to tell us that the examiner had expertise that was applicable. Aren't all examiners supposed to be expert in the field that they're examining? We do consider them to likely be persons of ordinary skill. But it's not the same as expert. It's not the same as expert. It's not the same as personal knowledge. It's not the same as being able to say, yes, I know this limitation was present in the art at the time this particular invention was made. We would also point out that finding for hemp in this case would create a difficult situation for the PTO as well as for this court. And as Judge Lurie pointed out earlier, the function of the appellate court is to review the board based on the evidence and argument that was actually presented to the board. Well, it's to review the board also based on what the board  Correct. So it's to review the board based on what the board said. And the board said here there has to be evidence in the record. If that is incorrect, then we have to remand, right? If the board erred, then that would be a cause for remand. But we submit that the board did not err here. This was a situation where... So you're stating that there had to be evidence in the records, not error? In Ray Zirko's case, that's actually what the court said. So when you're talking about whether or not a limitation is known in the art, you do need to be able to point to some evidence in the record. There is a rule. I don't know whether it's in the MPEP or Rules of Practice Aware, that says the examiner can consider, can utilize his or her common knowledge. What precisely does that say? So it precisely says that the examiner can rely on his or her personal knowledge to make a rejection. But then if challenged on that, the examiner has to point to evidence in the record or put forth an affidavit stating that this is my personal knowledge. So you're saying the rules compel affirmance? Yes, Your Honor. And HIP has not applied, or has not argued before this court that the PTO somehow misapplied its rules as to HIP in this case. Oh yes, I think they have. I think they have said that the examiner didn't do what he was supposed to do. In terms of, I meant in terms of whether or not the PTO acted properly in not taking advantage of this particular personal knowledge official notice. No, that's what they, that is their argument. That the board and the examiner should have relied on their personal knowledge as a person skilled in the art and that they declined to do that improperly, right? Yes, Your Honor. Anything further? No, Your Honor. Thank you, Ms. Saburo. Mr. Stern has some rebuttal time. Thank you. Thank you, Your Honors. The CRU examiners nor the board ever considered what a person of ordinary skill in the art would have known as common knowledge or would have applied as common sense. Your Honor, it's important, I think, to look at the Shinnip patent because the Shinnip patent was the basis of the rejection and the Shinnip patent, as we state on page 12 of our blue brief, it states, the invention described herein is used to couple acoustic signals in an individual's ear canal and earpiece and acoustic coupler are adapted for use with any hearing device or any audio system to couple sound to the ear canal. With respect to the connection between the earpiece and the external audio system, Shinnip teaches that is the canal speaker assembly may be, and this is the quote, coupled either electrically via a signal cable 39 or by other means to the earpiece as shown in figure 20. In the oral argument to the board, I pointed to figure 20. At the end of the wire in figure 20, wire 39, 37, as is shown on page 12 of our brief, you see these wires. But we have an examination system based on citation of references. And I may have used the word slippery slope already, but I worry about that. Where an examiner who is of some skill and training in a particular art can simply say, aha, I think. I think, and it's my common knowledge. And they start rejecting claims based on what they think. And isn't that a serious departure from a system of citation of references to reject claims? No, not here. Not here. This is a peripheral claim. It's a third level claim. It talks about electrical connection. The invention here was a cushion tip that was deformed as you insert the speaker into your ear canal. It had nothing to do with this limitation. All of those claims were rejected on five different combinations by the board. They put a blankered approach onto themselves about these two claims because we didn't cite a document that shows a fundamental concept. It never occurred to us that we had to go that way. If this is the rule, then we have to provide documentary evidence for all common sense, for all general knowledge. For all limitations. For all limitations. A mechanical claim with six limitations and the examiner defines five of them and says, well, the sixth one is old hat. We know about that. Your Honor, the board, the CRU examiners, nor the board ever read Shinab, ever considered Shinab through the eyes of a person of ordinary skill in the art. They never considered what a person of ordinary skill in the art would have as common knowledge or common sense here. That cannot be the law. Otherwise, the re-examination process is a radical departure from the ordinary examination process. Thank you. Thank you, Mr. Stern. We'll take the case in reverse.